IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH FRANKO, ET AL. | : | CIVIL ACTION |
| | : | |
| V. | : | |
| | : | |
| AMERIPRISE FINANCIAL SERVICES, | : | |
| INC., f/k/a AMERICAN EXPRESS | : | |
| FINANCIAL ADVISORS, INC. | : | NO.  09-09 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                                     June 11, 2009

      Petitioners Joseph and Judith Franko commenced arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, against Respondent Ameriprise Financial Services ("Ameriprise"), formerly American Express Financial Advisors, after they sustained investment losses on their retirement portfolio, which was invested through Ameriprise.  The arbitrators denied the Frankos' claims, and the Frankos filed in this Court a "Petition to Vacate Arbitration Award Pursuant to 9 U.S.C. § 12."  Ameriprise filed a response and Cross-Petition to Confirm the Arbitration Award and for Sanctions.  For the following reasons, we deny the Frankos' Petition to Vacate, confirm the Arbitration Award, and deny Ameriprise's request for sanctions.

**I.      BACKGROUND**[1]

      Joseph Franko is 67 years old.  He worked for more than 30 years as an hourly laborer for the Procter & Gamble Company ("P&G").  In 1997, P&G offered early retirement to many of its

---

[1]The parties have submitted certain documentary evidence that was introduced at the Arbitration sessions, but neither provided a transcript of the proceedings.  In their respective briefs, both parties make representations regarding the testimonial evidence at the arbitration sessions, apparently based on their recollections of that testimony.  In the absence of a written record, we have accepted those representations as true insofar as they are not explicitly disputed.  <u>See</u>, <u>e.g.</u>, <u>Edward Mellon Trust v. UBS Painewebber, Inc.</u>, Civ. A. No. 06-0184, 2006 WL 3227826, at *4 (W.D. Pa. Nov. 6, 2006) (accepting both parties' respective summaries of the evidence where transcript was incomplete and parties did not dispute each other's characterizations of the evidence).

employees and Mr. Franko accepted that offer. At the time, Mr. Franko had a retirement account, which contained P&G stock and a fixed income note, and which had a value of approximately $775,000.

In the two years before his retirement in 1997, Mr. Franko attended a series of retirement seminars that P&G offered. In April of 1997, he was referred to Joseph P. Krugel, who operated a one man office of American Express Financial Advisors in Wilkes Barre, Pennsylvania. Krugel prepared an April 9, 1997 Asset Allocation Analysis to "assist [Mr. Franko and his wife] in the development of [their] long term investment strategy." (Pet'r Ex. 4 at 1.) The Analysis set forth a proposed asset mix that was developed using a computer program and various inputs, including (1) the Frankos' financial goals; (2) restrictions on investment categories that the Frankos wanted to avoid or limit; (3) the time frame of the Frankos' financial goals; (4) the historical performance of major categories of investments; and (5) "American Express Financial Advisors investment experts' forecasts about future long term performance of the financial markets." (Id.) At the same time, the Analysis warned that past performance was no guarantee of future performance and that the proposal did not provide a comprehensive analysis of the Frankos' ability to reach their goals, because that component of financial planning is "more appropriately handled by a comprehensive financial analysis." (Id.)

At the Frankos' request, the April 9, 1997 Analysis contemplated a $52,750 annual distribution from the retirement account for the initial 5 years. It proposed an investment plan that, if followed, was projected to result in a retirement account worth over $600,000 when Mr. Franko reached the age of 76 in 2017. In contrast, the Analysis projected that, if the Frankos made no changes to their existing investments, the retirement account would be worth less than $40,000 in

2017.

On April 25, 1997, Mr. Franko completed two investment applications with Krugel – an IMA application and an IRA application. In the applications, as well as in a June 4, 1997 new account application for strategic portfolio services, as Mr. Franko represented that he was a "growth and income" investor with average or "moderately conservative" risk tolerance. (Resp. Ex. D; Resp. Ex. E. at 13; Pet'r Ex. 9.)

Between April 1997 and April 2000, Krugel provided the Frankos with four additional Asset Allocation Analyses. (Pet'r Exs. 5-8.) Like the April 9, 1997 Analysis, each Analysis explained the process of proposing an asset mix and warned about both the uncertainty of investment returns and the limitations of the Analysis. Although there were Analyses prepared between April 2000 and sometime in 2005, Ameriprise asserts -- and the Frankos do not dispute -- that the Arbitration record demonstrated that Krugel continued to review the investments with the Frankos on an annual basis, and the Frankos received monthly account statements, which Mrs. Franko reviewed.

From 1997 through mid-2000, the Frankos' investments gained value, so that the account largely held its value in spite of approximately $200,000 in withdrawals. (See Resp. Ex. H; Pet'r Ex. 14.) Between September 2000 and December 2002, however, the account value fell from approximately $660,000 to approximately $212,000, with only approximately $165,000 in withdrawals. (See Resp. Ex. H; Pet'r Ex. 14.) In 2002, Mr. Franko requested that the investments be adjusted to be "more conservative."[2] (Resp. Br. at 10.)

In April of 2005, after additional withdrawals of over $100,000, the Frankos' portfolio value

---

[2]Notably, at the same time, Mr. Franko directed Krugel to purchase 1000 additional shares of P&G stock, which resulted in P&G stock representing 43% of the Frankos' portfolio. (Resp. Ex. O.)

was approximately $250,000. (See Resp. Ex. N.) One year later, in April of 2006, the value was $212,179. In May 2006, the Frankos filed with the National Association of Securities Dealers ("NASD") a Statement of Claim against Ameriprise on account of their disappointing investment returns. The Frankos asserted the following causes of action: violation of the anti-fraud provisions of the federal securities laws, sale of unsuitable securities, common law fraud, breach of fiduciary duty, failure to supervise, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Essentially, the Frankos asserted that Krugel had taken excessive risk with their life savings, recommended unsuitable high-risk investments, "guaranteed" returns that he could not deliver, and failed to advise them that they would prematurely exhaust their savings if they did not reduce their withdrawal rate. The Frankos sought a monetary award of $308,813, which is the sum of $76,393 in alleged investment losses, $163,477 in foregone interest, $27,953 in management fees, and $40,990 in attorneys fees. (See Pet'r Ex. 2 at 5.)

The Arbitration Panel held hearing sessions on 11 separate days between October 16, 2007, and September 19, 2008, and both parties submitted testimonial and documentary evidence. The parties stipulated that the Frankos had sustained gross losses of $76,393 in their principal investment between June 1997 and April 2006.[3] Respondent, however, offered the expert testimony of Paul Moulden, who testified that Respondent's investment recommendations were suitable under the circumstances and that the asset allocations were proper for early retirees who were long-term growth and income investors. (Resp. Br. at 12.)

In October 2008, at the conclusion of the Arbitration sessions, the Panel issued an Award

---

[3] Respondent's expert testified that, when gains, dividends and/or interest were included, the total net loss was only $40,447. (See Resp. Ex. S, Tab 3.)

denying the Frankos' claims in their entirety without explanation. Thereafter, the Frankos requested an explanation of the decision.[4] The Arbitration Panel subsequently issued a Modified Award, which included the following:

> After taking into consideration the totality of the evidence including, but not limited to documents submitted in evidence by both Claimants and Respondent, the Panel unanimously concluded that the decline in value of Claimants' portfolio had been due to market conditions.
>
> Furthermore, the entire Panel agreed that based on the totality of the evidence presented, the spread of investments selected by Ameriprise and/or their representative were within an acceptable spectrum and quality, as well as within the industry norm for the times and suitable to Claimants' objectives as stated by and/or acquiesced to by the Claimants in written form, and/or by their actions on various occasions.

(Resp. Ex. B at 2.)

On January 2, 2009, the Frankos filed the Petition to Vacate the Award that is presently before us. Respondent filed a "Cross-Petition to Confirm the Arbitration Award and Sanctions" on April 1, 2009.

## II.   LEGAL STANDARD

The FAA provides for expedited judicial review of arbitration awards. See 9 U.S.C. §§ 9-11.

---

[4]The Frankos assert that they requested this explanation pursuant to Rule 12904(f) of the NASD Code of Arbitration Procedure, which, according to a January 2005 news release upon which the Frankos rely, provides investors the option of requiring a written explanation of an arbitration panel's decision. However, that same news release states that the request for a written decision must be made before the arbitration panel holds its first hearing. (See Resp. Ex. A.) Furthermore, it appears that Rule 12904(f) did not apply to this case, as the Rule specifically provides that it applies only to claims filed on or after April 16, 2007, or in cases in which the list of arbitrators is generated after April 16, 2007, neither of which is the case here. Under the Rules applicable to the instant case, there are no provisions for the explanation of a Panel decision. See Rule 10330, NASD Code of Arbitration Procedure for Cases Filed Prior to April 16, 2007.

Under § 9 of the FAA, a court must confirm an award unless it is vacated, modified, or corrected as permitted in §§ 10 and 11. Id. § 9. There is a strong presumption under the FAA in favor of enforcing arbitration awards. Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005). Thus, an award is generally presumed valid and review is extremely deferential. Id. The party seeking to vacate the award bears the burden of proving that vacatur is appropriate. AAMCO Transmissions, Inc. v. Sally, Civ. A. No. 08-151, 2008 WL 5272449, at *3 (E.D. Pa. Dec. 17, 2008) (citation omitted).

Section 10 of the FAA, which concerns applications to vacate arbitration awards, provides four bases up which a district court may vacate an arbitration award. 9 U.S.C. § 10. Subsection 10(a)(4), on which the Frankos rely, provides that a district court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Id. § 10(a)(4). To support vacatur under § 10(a)(4) based on the terms of an award, a court must find the terms to be "completely irrational." Southco, Inc. v. Reell Precision Mfg. Corp., 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008); Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC, 260 Fed. App'x 497, 501 (3d Cir. 2008) (citation omitted). "For an award to be 'completely irrational,' it is not enough that a court finds that the arbitrators erred, but rather it must find that their decision escaped the bounds of rationality." Southco, 556 F. Supp. 2d at 511 (citing Clarendon Nat'l Ins. Co. v. NCO Fin. Sys., Inc., Civ. A. No. 03-69, 2004 WL 838136, at *2 (E.D. Pa. Apr. 8, 2004)). In other words, there must be "no support in the record for its determination." Exxon Shipping Co. v. Exxon Seamens Union, 993 F.2d 357, 360 (3d Cir. 1993) (quoting News America Publ'ns v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir.1990)).

In addition to the four bases for vacatur set forth in § 10, the United States Court of Appeals for the Third Circuit has recognized a fifth basis for vacatur: namely, "manifest disregard of the law."[5]  "The 'manifest disregard of the law' doctrine is a judicially-created one that is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply." See Black Box Corp. v. Markham, 127 Fed. App'x 22, 25 (3d Cir. 2005) (citation omitted).  It is applicable only in the "exceedingly narrow circumstance" in which "'an arbitration panel manifestly disregards, rather than merely erroneously interprets, the law.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente, 272 Fed. App'x 174, 177 (3d Cir. 2008) (quoting Metromedia Energy, Inc. v. Enserch

---

[5]The United States Supreme Court recently held, in Hall Street Associates, L.L.C. v. Mattel, Inc., 128 S. Ct. 1396 (2008), that § 10 of the FAA provides the exclusive grounds for vacatur of an FAA decision. Id. at 1404-06. Hall Street recognized that a number of Circuit Courts, including the Third Circuit, had previously held that "manifest disregard of the law was a further ground for vacatur on top of those listed in § 10." Hall Street, 128 S. Ct. at 1403 (citing cases); see Black Box 127 Fed. App'x at 25. Hall Street stopped short of explicitly saying that manifest disregard of the law was no longer a valid ground for vacatur, but indicated that, to the extent it remained valid, it should be interpreted as fitting within the parameters of § 10 of the FAA. 128 S. Ct. at 1404. Thus, the Supreme Court explained, manifest disregard may "refer[] to the § 10 grounds collectively, rather than adding to them," or it may be "shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.'" Id.
   The Third Circuit has not yet spoken on Hall Street's effect on the use of the manifest disregard standard in this Circuit.  The Ninth Circuit has stated, post-Hall Street, that "the manifest disregard standard is shorthand for a statutory ground under the FAA, specifically, 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'" Comedy Club, Inc. v. Improv West Assocs., 553 F.3d 1277, 1290 (9th Cir. 2009) (citation omitted). The Second Circuit has found post-Hall Street that the manifest disregard doctrine "survives," essentially "as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA . . . ." Stolt-Nielson SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008). Meanwhile, the First and Fifth Circuits have concluded, to the contrary, that the manifest disregard standard did not survive the Court's holding in Hall Street. Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008); Citigroup Global Markets, Inc. v. Bacon, 562 F.3d 349, 358 (5th Cir. 2009). We need not resolve this Circuit split here because, even accepting the continued viability of the manifest disregard standard, the Frankos cannot prevail.

Energy Servs., Inc., 409 F.3d 574, 578 (3d Cir. 2005)).  In other words:

> Manifest disregard for the law means more than mere legal error or misunderstanding.  See Tanoma Mining. Co., Inc. v. Local Union No. 1269, 896 F.2d 745, 749 (3d Cir. 1990) (stating that an arbitration award may not be vacated merely because the arbitrator made an error of law). Rather, "the decision must fly in the face of clearly established legal precedent," Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995), such as where an arbitrator "appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it."  Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986).

Sherrock Bros., 260 Fed. App'x at 499.  The party seeking vacatur on the basis of manifest disregard of the law "'bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'"  Black Box, 127 Fed. App'x at 25 (quoting Duferco Int'l Steel Trading v. T. Klavness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)).  Notably, a court may never "vacate an arbitration award merely because it views the merits of the claims differently or because the court feels that the arbitrator made a factual or legal error." Jones v. Intarome Fragrance Corp., Civ. A. No. 04-5625, 2007 WL 1296656, at *3 (D.N.J. Apr. 27, 2007) (citations omitted); see also Local 853 Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Jersey Coast Egg Producers, Inc., 773 F.2d 530, 534 (3d Cir. 1985) ("The court may not reevaluate supposed inconsistencies in the arbitrator's logic or review the merits of the arbitrator's decision.").

## III.  DISCUSSION

The Frankos move to vacate the Arbitration Award in this case on the bases that the Arbitration Panel exceeded or imperfectly executed its authority, see 9 U.S.C. § 10(a)(4), and acted in "manifest disregard" of the law.  Specifically, the Frankos argue that the Arbitration Panel's

decision was irrational given the evidence before it, and that the Panel manifestly disregarded the law insofar as it failed to directly address the Frankos' state law claims and ignored the applicable law that the Frankos cited in their pre-hearing brief. We do not find merit in either argument.

1. <u>Scope of Arbitration Panel's Authority</u>

The Frankos argue that the Arbitration Panel exceeded the scope of its authority by issuing a "completely irrational" Award. As set forth above, the Award stated, in part, that the Frankos' losses were due to "market conditions," and that the "spread of investments . . . were within an acceptable spectrum and quality, as well as within the industry norm for the times and suitable to Claimants' objectives." (Resp. Ex. B, at 2.) The Frankos maintain that these findings were "completely irrational" in light of record evidence that: (1) their withdrawal rate was 8.5% and experts recognize a high failure rate for retirement portfolios with withdrawal rates in excess of 7%; (2) "31 of the 42 securities recommended to, and purchased by" them were proprietary and shelf-space funds, which "almost without exception" were unrated, rated "above average risk," or rated "below average return" by Morningstar; and (3) the S&P 500 index outperformed their investments.[6] These arguments have no merit.

As stated above, a district court cannot find the terms of an award to be "completely irrational" and, thus, beyond the scope of the arbitrators' authority, unless there is no support in the record for the award. <u>Exxon Shipping</u>, 993 F.2d at 360. It is the petitioner's burden to establish the absence of record support for the award. See <u>Jones</u>, 2007 WL 1296656, at *3. In spite of this burden, the Frankos have not provided us with the entire record. Indeed, they have failed to provide

---

[6] The Frankos introduced at the Arbitration evidence that, if they had invested their whole portfolio in the S&P 500 during the investment period, they would have earned $149,802 more than they earned on their investments account.

us with <u>any</u> of the testimonial evidence that was presented at the Arbitration sessions.[7] In the absence of the complete record, the Frankos cannot meet their burden of showing that the record, as a whole, contains no support for the arbitration award. Thus, we could deny their argument that the award was "completely irrational" on this basis alone.

Furthermore, accepting each parties' undisputed representations regarding the testimonial record, we conclude that there was record support for the Arbitration Panel's challenged findings. Most notably, Ameriprise maintains, and the Frankos do not dispute, that the record evidence before the Panel included expert testimony that its investment recommendations for the Frankos were suitable under the circumstances, and that the asset allocations were proper for early retirees who were long-term growth and income investors. Furthermore, in spite of the record evidence on which the Frankos rely showing that investment portfolios with an 8.5% withdrawal rate had a high failure rate, there was also record evidence that the Frankos dictated their withdrawal rate insofar as they specifically requested account distributions of over $52,000/year in order to maintain their standard of living. Record evidence that the portfolio contained 31 funds that were not treated favorably in the Morningstar ratings was also disputed by Krugel, who testified that, "from a historical perspective, the recommended mutual funds were at or near the top of their respective asset classes and had longstanding and solid performance history, or were mirror-images of funds of longstanding top performing mutual funds." (Resp. Br. at 20.)

Finally, even though it was apparently undisputed that the S&P 500 outperformed the

---

[7] Indeed, the Frankos only assert that they "obtained portions of the audio recording of the hearing sessions," but that "in substantial part, the[] recordings are inaudible." (Pet'r Reply Br. at 6 n.8.) Meanwhile, Ameriprise has provided us with a copy of an October 6, 2008 letter from Petitioners' counsel to NASD Dispute Resolution, Inc., in which the Frankos only requested a copy of the September 19, 2008 hearing session. (Resp. Ex. C.)

Frankos' investment, the Arbitration Panel was free to give no material weight to this isolated fact, where the Frankos cite no authority for the proposition that a broker or investment advisor is liable to his clients any time he fails to match the S&P 500's returns. Indeed, such a basis for liability would be particularly inappropriate here, where the Frankos have consistently argued that Ameriprise failed in its duties by recommending a portfolio that was too risky in that it was too heavily weighted to equities. (See, e.g., Pet'r Br. at 9; Pet'r Reply Br. at 4.)

In sum, the bulk of the record facts upon which the Frankos rely to support vacatur under § 10(a)(4) were disputed, and the others did not have meaningful probative value. Thus, the Frankos have failed to prove that the Arbitration Panel's decision "escaped the bounds of rationality" by having absolutely no support in the record facts. Southco, 556 F. Supp. 2d at 511. We therefore refuse to vacate the award pursuant to § 10(a)(4).

        2.     Manifest Disregard of the Law

The Frankos next argue that the Arbitration Panel manifestly disregarded the law by ignoring their state law claims and the legal authorities that they cited in their pre-hearing brief, i.e., the well managed portfolio theory for measuring damages and various legal authorities regarding breach of fiduciary duty and the UTPCPL. This claim is meritless as well.

Initially, the Frankos maintain that the Panel's manifest disregard of their state law claims is apparent from the Award, which does not separately analyze those claims. However, it is clear from the text of the Award that the Panel considered and rejected the Frankos' state law claims, as the Award lists those claims in the case summary and later states that the Frankos' claims are denied "in their entirety." (See Modified Award, Resp. Ex. B.) Although the explanation that was added to the Award at the Frankos' request does not individually address the state law claims, the Frankos

acknowledge that the issuance of an explained decision remains within the discretion of the Panel. (Pet'r Br. at 11 n.15.) That being the case, "[t]he failure of [the Panel] to write a formal opinion does not support the conclusion that [it] manifestly disregarded the law since 'it is not reasonable to attempt to draw conclusions or inferences from [a Panel's] not doing something that [it] was not obligated to do.'" Grosso v. Barney, No. 03-MC-115, 2003 WL 22657305, at *4 (E.D. Pa. Oct. 24, 2003) (citing Coltec Indus., Inc. v. Elliott Turbocharger Group, Inc., Civ. A. No. 99-1400, 1999 WL 695870, at *5 (E.D. Pa. Sept. 9, 1999)).

The Frankos' argument that the Arbitration Panel manifestly disregarded the well managed portfolio theory, which is a damages theory, is also meritless. See, e.g., Laney v. Am. Equity Inv. Life Ins. Co., 243 F. Supp. 2d 1347, 1353-57 (M.D. Fla. 2003) (discussing well managed portfolio theory as a theory of damages). Where, as here, the Arbitration Panel found no liability, it simply was not necessary for the Panel to address or consider the extent of any potential damages. Thus, contrary to the Frankos' claim, the Arbitrators did not manifestly disregard the well managed portfolio theory.

Similarly, the Frankos have failed to establish that the Arbitration Panel manifestly disregarded any legal authority regarding breach of fiduciary duty. The Frankos appear to argue that the Arbitration Panel must have ignored the breach of fiduciary claim and the law supporting it, because the law is clear that brokers owe fiduciary obligations to their clients and, here, there was "substantial evidence" submitted at the hearing that Ameriprise violated its fiduciary duties. The Frankos further argue that the Panel manifestly disregarded the law insofar as it failed to find that Ameriprise was "barred or estopped from litigating" the issue of whether it violated its fiduciary duties. In support of this second argument, they point primarily to evidence that Ameriprise settled

a New York class action, in which the plaintiffs alleged that Ameriprise had undisclosed interests in mutual funds that it recommended to its customers, including 31 funds that the Frankos purchased. See In re American Express Fin. Advisors Sec. Litig., Civ. A. No. 04-1773 (S.D.N.Y.).

However, we may not vacate an arbitration award merely because we "view[] the merits of the claims differently" or because we "feel[] that the arbitrator made a factual or legal error." Jones, 2007 WL 1296656, at *3 (citation omitted). As stated above: "The 'manifest disregard of the law' doctrine is . . . to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent.'" Black Box, 127 Fed. App'x at 25. Moreover, the Frankos "'bear[] the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" Id. (emphasis added) (quoting Duferco Int'l Steel, 333 F.3d at 389). Under our deferential standard of review, and considering Petitioners' burden of proof, it is plain that the mere fact that there was "substantial evidence" supporting a conclusion contrary to that reached by the Arbitration Panel does not support vacatur. See Southco, 556 F. Supp. 2d at 510 ("[C]ourts should not reweigh the evidence to decide whether to vacate the award." (citations omitted)). Moreover, the Frankos have not established that there was a "clearly defined governing legal principle" that required the Panel to find that Ameriprise was barred or estopped from litigating the issue of whether it breached fiduciary duties owed to the Frankos on account of the results of prior litigation. Indeed, although the Frankos set forth the elements of issue preclusion in a footnote in their brief, they make no attempt to explain how each of the elements is satisfied here, much less to explain how each element is so clearly satisfied that it is undeniable that the Panel simply ignored the controlling law. Thus, the Frankos have failed to establish that the Panel engaged in "egregious impropriety" by ignoring

a clearly defined and controlling legal principle.

Finally, the Frankos argue that the Arbitration Panel must have manifestly disregarded UTPCPL law, because that law provides a private cause of action to purchasers of securities against their brokers and investment advisors and, in their view, the evidence here established that Krugel engaged in fraudulent conduct that the UTPCPL prohibits. However, the Panel in no way indicated that it did not recognize a private cause of action under the UTPCPL, and the evidence to which the Frankos point to establish that Krugel engaged in fraudulent conduct was disputed during the arbitration hearings. Accordingly, the Frankos have failed to establish that the Panel manifestly disregarded UTPCPL law.

**IV.    CONCLUSION**

For the foregoing reasons, the Frankos have failed to set forth any basis upon which we could vacate the Arbitration Panel's Award, and we therefore confirm the Award. Ameriprise also asks that we sanction the Frankos for filing the motion to vacate without a legitimate basis. In support of this request, Ameriprise cites a single Eleventh Circuit case that states that sanctioning parties who commence baseless litigation over arbitration awards is an "idea worth considering." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 913 (11th Cir. 2006). In the absence of more definitive authority from the Third Circuit, we will not exercise our discretion to impose such sanctions here.

An appropriate Order is issued in conjunction with this Memorandum Opinion.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J